UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
───────────────────────────────────────────

|  |  |
|---|---|
| UNITED STATES OF AMERICA | 22 Cr. 178 (NSR) |
| - V. – |  |
| DAVID ZAYAS |  |

───────────────────────────────────────────

## REPLY MEMORANDUM IN SUPPORT OF
## DAVID ZAYAS'S MOTION TO SUPPRESS

        David Patton, Esq.
        Federal Defenders of New York
        81 Main Street, Suite 300
        White Plains, New York 10601
        914-458-8124

        By Benjamin Gold,
        Attorney for DAVID ZAYAS

To:   Damian Williams
       United States Attorney
       Southern District of New York
       300 Quarropas Street
       White Plains, New York  10601

       Attention:   Timothy Josiah Pertz
                          Assistant United States Attorney

Introduction

David Zayas (herein Mr. Zayas) submits this reply memorandum in response to the Government's opposition papers. As detailed below, law enforcement's reliance on license plate reader (herein "LPR") data and a related law enforcement investigation, *did not* provide sufficient cause to justify a narcotics investigation. As such, the search and seizure of Mr. Zayas violated Mr. Zayas's constitutional rights. Additionally, the warrantless search of Mr. Zayas's telephone was improper and requires suppression.

Point One

The Government's Argument that Law Enforcement Officers Possessed Reasonable Suspicion is Not Supported by the Evidence and Incorrectly Implies that Travel to New York from Massachusetts is Evidence of Criminality.

In order to justify detaining Mr. Zayas on the side of a busy highway to conduct a narcotics investigation, the Government argues that even if Mr. Zayas had committed no traffic infractions, his automobile's prior trips to New York City, combined with his prior drug-related conviction, provides sufficient cause to justify this significant seizure. *See* Gov't Memorandum, P. 6-7, 9-13. This argument must be rejected because it is speculative and amounts to a seizure based on a whim. At the very least, Mr. Zayas is entitled to a hearing to determine whether law enforcement officers had sufficient cause to justify the extended seizure and K-9 search that took place here.

"[R]easonable suspicion must derive from specific and articulable facts which, taken together with rational inferences from those facts, provide detaining officers

with a particularized and objective basis for suspecting wrongdoing." *United States v. Churchill*, 792 Fed.Appx. 39, 41 (2d Cir. 2019), *citing United States v. Compton*, 830 F.3d 55, 61 (2d Cir. 2016) (internal citations omitted). In this case, law enforcement officers did not have particularized and objective facts suggesting that Mr. Zayas was engaged in wrongdoing, and they certainly did not have sufficient cause to justify a prolonged seizure so that law enforcement could conduct a K-9 search or use a scope camera to look inside Mr. Zayas's automobile.

In order to argue that Mr. Zayas is not entitled to a hearing, the Government alleges that law enforcement was entitled to seize Mr. Zayas to conduct a narcotics investigation based solely on his prior conviction, his driving history and details regarding a previous automobile sale. Gov't Memorandum, P. 9. This argument must fail. The Government's argument, if accepted, would circumvent *Terry* and would effectively permit intrusive seizures and investigations of anyone with a criminal record who occasionally drives to a large city. *See Terry v. Ohio*, 392 U.S. 21 (1968) ("the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" a seizure.).

Moreover, a careful view of the Government's allegations in this case demonstrates that the justification for Mr. Zayas's seizure is far too speculative. For instance, while the Government alleges that Mr. Zayas "had a prior felony conviction for narcotics trafficking and had additional prior arrests for narcotics and weapons offenses," Gov't Memorandum, P. 10, the Government fails to provide any

details to suggest that this prior conviction (or the prior cases which seem to have been dismissed) supports the conclusion that Mr. Zayas was engaged in wrongdoing on March 10, 2022.  For instance, the Government does not allege that Mr. Zayas had previously driven drugs to New York City, or that he had previously been a drug courier.  Similarly, the Government does not mention when this conviction occurred.  Instead, the Government merely argues propensity: that prior drug conviction, no matter how distant or unrelated, equals justification for a seizure.  This argument must be rejected because it circumvents *Terry's* requirement that justification for a seizure be based on "rational inferences" suggesting criminality is afoot.

It is not surprising that the Government's argument regarding Mr. Zayas's prior conviction is non-specific and conclusory, as there is simply no link between Mr. Zayas's prior conviction and the current charges.  According to a RAP sheet received in discovery, Mr. Zayas has one prior conviction stemming from a September 13, 2012, arrest in Massachusetts.  In that case, Mr. Zayas was convicted of trafficking a small amount (between 18 and 36 ounces) of cocaine.  This outdated conviction hardly suggests that, ten years later, Mr. Zayas would likely be driving with drugs.[1]  But this is precisely the argument the Government is asking the Court to accept.

---

[1] Even if this conviction were not stale, its relevance is questionable as there is no indication that Mr. Zayas's prior conviction involved anything like transporting drugs in an automobile.  Indeed, the statute Mr. Zayas was convicted of defines trafficking broadly and it includes the mere possession with intent to dispense.  *See* MGLA 94C § 32E.

Similarly, the Government's allegation that Mr. Zayas's occasional trip to New York City justifies a seizure is unavailing. It is not suspicious to travel and to hold otherwise would subject any commuter, traveler, or vacationer to intrusive seizures merely for exercising their constitutionally protected right to travel. *See Reid v. Georgia*, 448 U.S. 438, 441 (1980) (seizure of suspected drug couriers at an airport not supported by reasonable suspicion because the "circumstances [described by the Government] describe a very large category of presumably innocent travelers, who would be subject to virtually random seizures were the Court to conclude that as little foundation as there was in this case could justify a seizure"). That Mr. Zayas's car made nine trips to New York over a nineteen-month period is irrelevant because there is nothing suspicious about visiting New York. Travel is constitutionally protected, and law enforcement should not be permitted to violate a traveler's Fourth Amendment rights merely because they choose to exercise their Fifth Amendment right to travel. *See Kent v. Dulles*, 357 U.S. 116, 125 (1958) ("The right to travel is part of the 'liberty' of which the citizen cannot be deprived without the due process of law under the Fifth Amendment"). Moreover, characterizing motorists from out of state as inherently suspect would violate equal protection and circumvent the Fourth Amendment's requirement that seizures be based on more than a hunch.

While the Government alleges that there was a "substantial basis" to believe that Mr. Zayas was involved in drug trafficking, Gov't Memorandum, P. 12, the Government only points to innocuous, non-criminal conduct – mainly, driving to

New York City on several occasions – to justify conducting a criminal investigation that included a traffic stop and an invasive K-9 search. The Government correctly points out that innocent conduct can be used to justify a *Terry* stop, Gov't Memorandum, P. 11, but "the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts." *U.S. v. Sokolow*, 490 U.S. 1, 10 (1989). Mr. Zayas's conduct – having one prior conviction and driving to New York – does not raise sufficient suspicion to justify a seizure, let alone a K-9 search. As such, the seizure was improper, and its "fruits" must be suppressed.

Alternatively, a hearing is required to determine whether the search and seizure of Mr. Zayas was permissible. Such a hearing is necessary because there are multiple factual disputes. First, Mr. Zayas denies having committed a traffic infraction, while the Government alleges that he did. Second, the Government alleges that, as a matter of law, LPR data and a multi-year investigation justified law enforcement's targeting of Mr. Zayas for a narcotics investigation. Gov't Memorandum, P. 9. The defense disputes that this investigation establishes reasonable cause or probable cause. Moreover, if the Government intends to rely on LPR readers and the purported multi-year investigation to justify the warrantless search and seizure of Mr. Zayas, then the Government must be prepared to present this evidence at a hearing so that the defense can challenge it through the adversarial process. *See U.S. v. Pena*, 961 F.2d 333, 340 (2d Cir. 1992) (explaining that when the Government cites an investigation and a confidential source to justify

a warrantless search, it is an error to deny defendant's suppression motion without a hearing because a hearing is the only way to make sure that the Government's claims are "adequately tested.").[2]

Point Two

Law Enforcement Officers Illegally Accessed Mr. Zayas's
Phone, and All "Fruits" Must be Suppressed.

As detailed in Mr. Zayas's affidavit, law enforcement officers searched Mr. Zayas's phone prior to obtaining a warrant. This appears to be uncontested.[3] As such, the Court should issue an order that all "fruits" of that impermissible search, including testimony regarding what was observed during the warrantless search, be suppressed.

Conclusion

For the reasons stated above, and for those set forth in Mr. Zayas's August 15, 2022, submission, this Court should grant Mr. Zayas's motion and suppress the fruit of the illegal search and seizure that occurred in this case. Additionally, the

---

[2] The Government's argument that the Court can assume that the K-9 was reliable, *Gov't Memorandum,* P. 25, is similarly unavailing. While the Government has provided certification regarding the dog, the Government should be ordered to provide the defense with the dog's field performance, including all instances of false positives. Similarly, if the Government intends to rely on the K-9 to justify its search, then Mr. Zayas "must have an opportunity to challenge such evidence of a dog's reliability, whether by cross-examining the testifying officer or by introducing his own fact or expert witness." *Florida v. Harris*, 568 U.S 237, 247 (2013).

[3] The Government has not disputed Mr. Zayas's assertion that law enforcement officers had accessed Mr. Zaya's phone at the scene of his seizure. *See* Affirdavit, ¶ 13.

Court should rule that the warrant was invalid and suppress all of the warrant's "fruits".

DATED: October 14, 2022

Respectfully Submitted,

/s/

_____
Benjamin Gold
Assistant Federal Defender
Federal Defenders of New York
Attorney for David Zayas
