

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*50 Main Street Suite 1100*
*White Plains, New York 10606*

November 6, 2023

**BY ECF**
The Honorable Nelson S. Román
United States District Judge
Southern District of New York
The Hon. Charles L. Brieant Jr. Federal Building and United States Courthouse
300 Quarropas St.
White Plains, NY 10601

    Re:    *United States v. David Zayas*, 22 Cr. 178 (NSR)

Dear Judge Román:

    The Government respectfully submits this letter in advance of sentencing in this matter. The parties have stipulated to an applicable range under the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") of 63 to 78 months' imprisonment (the "Guidelines Range"). However, that stipulation does not account for the disparity in the Guidelines' treatment of powder and crack cocaine, and without this disparity, the Guidelines Range would be 21 to 27 months' imprisonment. Still, the defendant previously served a sentence of 48 months' imprisonment for drug trafficking, and then reoffended, this time while possessing firearms. For these and other reasons explained below, a sentence of not less than 48 months' imprisonment would be sufficient but not greater than necessary to achieve the purposes of sentencing in this case.

### I.    Factual Background

    On March 10, 2022, at 3:00pm, an officer with the Westchester County Police Department ("WCPD") ("Officer-1") was patrolling the Cross County Parkway in Yonkers, New York, when Officer-1 saw a Gray Chevy Equinox with a Massachusetts license plate (the "Gray Equinox") illegally change lanes twice without signaling. After witnessing additional traffic infractions, Officer-1 signaled for the vehicle to pull over, which it did. Officer-1 walked up to the Gray Equinox and the driver was identified as David Zayas, the defendant. (PSR ¶ 9.)

    Zayas told Officer-1 that he was going to see his aunt in the hospital. When Officer-1 asked Zayas where the hospital was, Zayas was uncertain of the name and location of the hospital. Zayas first agreed that his destination was in the Bronx, then said that it was in Yonkers. Officer-1 asked Zayas if he was carrying drugs or guns in the car. Zayas denied having either. Officer-1 was traveling with a trained police dog ("K9-1"). Officer-1 brought K9-1 up to the Grey Equinox. K9-1 sniffed the outside of the car and alerted to the presence of narcotics. Officer-1 retrieved a scope camera and maneuvered it inside the cabin of the Gray Equinox.

Using the camera, under the dashboard, in what appeared to be a secret compartment (the "Trap"), was a large amount of U.S. currency and narcotics. (PSR ¶¶ 10-11.)

Officer-1 placed Zayas under arrest and the Gray Equinox was towed to WCPD Headquarters. Law enforcement officers from WCPD and HSI searched the Gray Equinox. In the trap, law enforcement recovered crack cocaine, $34,000 in cash, two semiautomatic pistols with full ammunition magazines, and two additional ammunition magazines, including an extended 30-round ammunition magazine, which was loaded with ammunition. (PSR ¶ 12.)

Zayas was charged by complaint with one count of possession of crack cocaine with intent to distribute in violation of 21 U.S.C. § 841(b)(1)(B), and one count of possessing a firearm during a drug trafficking offense, in violation of 18 U.S.C. § 924(c). A grand jury later indicted him on the same charges (the "Indictment").

## II.   The Plea and Guidelines Calculation

On June 28, 2023, pursuant to a plea agreement with the Government (the "Plea Agreement"), the defendant pleaded guilty to a lesser included offense of Count One of the Indictment, charging him with possessing crack cocaine with intent to distribute, in violation of 21 U.S.C. § 814(b)(1)(C). As stated in the Plea Agreement, the defendant's stipulated range under the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") is 63 to 78 months' imprisonment, based on an offense level of 25 and a criminal history category of II.

As discussed below, however, the applicable Guidelines range would be lower if proposed legislation to eliminate the powder-to-cocaine-base disparity—which the Department of Justice supports—were to be enacted.

## III.   Presentence Investigation Report and Probation's Recommended Sentence

The United States Probation Office ("Probation") calculates the applicable Guidelines as 63 to 78 months' imprisonment, based on an offense level of 25 and a criminal history category of II. (Dkt. No. 50 at 14.) That calculation is consistent with the Guidelines Range set forth in the Plea Agreement. Probation recommends a custodial sentence of 48 months, followed by three years of supervised release.

## IV.   The Defendant's Submission

The defendant's sentencing submission (Dkt. No. 53) asks that the defendant be sentenced to a non-incarceratory sentence, or, in the alternative, a term of one year and one day. (*Id.* at 6 n.2.) The submission focuses principally on the defendant's family, childhood, work history since arrest, and remorse.

## V. Discussion

### A. Applicable Law

The Guidelines still provide important guidance to the Court following *United States* v. *Booker*, 543 U.S. 220 (2005), and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005). Indeed, although *Booker* held that the Guidelines are no longer mandatory, it also held that they remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. *Booker*, 543 U.S. at 264. As the Supreme Court stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall* v. *United States*, 552 U.S. 38, 49 (2007).

After that calculation, however, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available"; (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants"; and (7) "the need to provide restitution to any victims," 18 U.S.C. § 3553(a)(1)-(7). *See Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

### B. A Sentence of Not Less than 48 Months Is Reasonable In This Case

In light of the Department of Justice's policy regarding the crack-to-powder-cocaine disparity reflected in the United States Sentencing Guidelines, the Government believes that a downward variance would be appropriate in this case. However, the nature and circumstances of the offense and the needs to promote respect for the law, provide just punishment, deter future criminal conduct, and protect the public all weigh in favor of a substantial sentence of imprisonment. The Government respectfully submits that a sentence of not less than 48 months would be sufficient but not greater than necessary to comply with the purposes of sentencing.

*First*, a sentence of not less than 48 months' imprisonment would appropriately reflect the nature and seriousness of the defendant's conduct. The defendant's conduct included the possession of two handguns, which it was illegal for him to possess. He coupled one of the

weapons with an illegal high-capacity magazine filled with bullets. The defendant also kept the guns and ammunition in close proximity to crack cocaine, which he intended to distribute for money. Crack can destroy the lives not only of drug users, but also their families and friends, and the drug trade is often a source of violence in the community. A sentence of not less than 48 months is necessary to reflect the societal toll exacted by this crime.

*Second*, a sentence of not less than 48 months is necessary to afford adequate deterrence to the defendant and others similarly situated, to promote respect for the law, and to protect the public. Such a sentence would send a message to the defendant and others that gun and drug possession will not be tolerated. It would also signal to others in the defendant's position that whatever personal advantage might be gained by distributing drugs and illegally possessing high-powered weaponry, such crimes are not worth the risk.

*Third*, a sentence of not less than 48 months' imprisonment appropriately reflects the defendant's history and characteristics. Most notably, in 2013, the defendant was sentenced to not less than 48 months' imprisonment for felony cocaine trafficking. He was not deterred from committing a narcotics offense again – and this time, heavily armed. A lower sentence would not be consistent with that history. The defendant has not been diagnosed with any mental health condition or prescribed any medication. While his recent employment progress is laudable, that he sought to distribute the drugs he possessed, while keeping multiple firearms and magazines full of ammunition close by, after a prior felony conviction, casts a shadow over other aspects of his personal history, and suggests a strong need for deterrence of further dangerous conduct.

Regarding the instant offense, when the defendant was pulled over for speeding and other traffic violations, laden with crack, guns, ammunition and cash in a trap compartment in his car, he sought to fool law enforcement into letting him go by covering up his itinerary with a story about visiting his ailing aunt. The ease with which he was deceptive when confronted, and his strategy of seeking to elicit sympathy to escape consequences, along with the repeat nature of this narcotics offense, casts doubt on whether he is truly remorseful for his actions or merely regrets getting caught again.

The Government agrees with the defense that a downward variance is appropriate in light of the Guidelines' disparate treatment of offenses involving crack and powder cocaine. On June 22, 2021, the Department of Justice provided public testimony in support of the Eliminating a Quantifiably Unjust Application of the Law Act ("EQUAL Act").[1] This proposed legislation would eliminate the powder-to-cocaine-base sentencing disparity in 21 U.S.C. §§ 841 and 960. Although the Department supports elimination of the powder-to-cocaine-base disparity, until legislation to that effect is passed, the current statutory and Guidelines provisions remain in effect.

---

[1] The EQUAL Act was introduced in the House in March 2021, and it was passed by the House by a vote of 361 to 66 on September 28, 2021. *See* H.R.1693 - EQUAL Act of 2021, https://www.congress.gov/bill/117th-congress/house-bill/1693?r=2&s=5. The Senate's version of the Equal Act, called the Equal Enforcement of Cocaine Laws Act was read twice and referred to the Committee on the Judiciary in June 2021. *See* S.2156 - Equal Enforcement of Cocaine Laws Act, https://www.congress.gov/bill/117th-congress/senate-bill/2156/all-info.

In this case, the amount of cocaine base attributable to the defendant's criminal conduct is 112 -196 grams, which results in a current base offense level of 26 and a current Guidelines sentencing range of 63-78 months' imprisonment, as set forth in the PSR. If the powder cocaine Guidelines were instead applied to the same amount of cocaine base, the base offense level would be 16, and the Guidelines sentencing range would be 21-27 months' imprisonment. The Court can and should, consistent with the law and current sentencing framework, consider the powder-to-cocaine base disparity in assessing the Section 3553(a) factors. *See Kimbrough v. United States*, 552 U.S. 85, 106-08 (2007); *United States v. Cavera*, 550 F.3d 180, 191-92 (2d Cir. 2008) (en banc). Based on consideration of the powder-to-cocaine base disparity and all the relevant factors under Section 3553(a) as set forth further herein, the Government submits that the Court should vary downward to a sentence of not less than 48 months' imprisonment.

A sentence of not less than 48 months would adequately balance the various considerations under § 3553(a) and achieve the statute's stated objectives.

## VI. Conclusion

For the reasons set forth above, the Government respectfully requests that the Court impose a sentence of not less than 48 months' imprisonment, as such a sentence would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

by: /s/ T. Josiah Pertz
T. Josiah Pertz
Assistant United States Attorney
(212) 637-2246

cc: Ben Gold, Esq. (ECF)